## J. N. LeBLANC *v.* PITTMAN & BARROW.

It is the *sum demanded* and not the amount of the judgment rendered which gives this court jurisdiction.

A plaintiff may remit a portion of his *demand* before judgment, even with the design of depriving the Supreme Court of its appellate jurisdiction.

In all matters not appealable, the inferior courts are presumed to have decided according to law, and such judgments cannot be distinguished, as to their validity, from those of this court.

*On a re-hearing*—Where this court has jurisdiction for one purpose it has for all facts embraced in the record.

Every proprietor whose levee shall have been broken by his own neglect to comply with the provisions of the 25th section of the Act of 1859, p. 91, shall be liable towards the planters who shall suffer by it, for all damages and losses.

VOORHIES and DUFFEL, Judges, *dissenting.*

The general rule is that a party may, at every stage of the proceedings, previous to the rendition of the judgment, discontinue the suit. In jury trials this motion may be made until the moment when the jury is about to withdraw.

Where the amount sued for was over $300, but before judgment was rendered in the lower court, the plaintiff entered a *remittitur*, which reduced it less than that amount—*Held:* that an appeal in such case should be dismissed, it not being appealable in amount.

APPEAL from the Fifth District Court of Assumption, *Roman, J.* *Adam, Beatty* and *Louis Bush*, for plaintiff. *Ilsley & Belche* and *C. Roselius*, for defendants and appellants.

MERRICK, C. J. There is a motion to dismiss the appeal in this case. Before the verdict was taken in the lower court, the plaintiff moved to

amend his petition by remitting seven hundred and ten dollars of his demand of one thousand dollars. But he was prevented from making the amendment by the objection of the defendants, which was sustained by the court, and the plaintiff excepted. The jury found a verdict for $800. Thereupon the plaintiff entered a *remittitur* for all except $299, for which judgment was rendered.

The appellee contends that the matter in dispute is under three hundred dollars, and therefore the appeal must be dismissed.

It is well settled that it is *the sum demanded*, and not the amount of the judgment rendered, which gives this court jurisdiction. 2 An. 167; 12 Rob. 178; 1 L. R. 246.

If we look to the *pleadings*, the proper criterion, in order to ascertion what is the amount in controversy, we find that the plaintiff's demand is for $1000. On this demand, the jury rendered a verdict of $800, and after the remittitur, a judgment for $290 was rendered against the defendants. Hence they appeal from a subsisting demand of one thousand dollars as it appears by the pleadings.

But it is said that the court manifestly erred in refusing the amendment, and therefore the plaintiff ought not to be prejudiced by the erroneous ruling of the District Court.

The reply to this is, that the question is one of jurisdiction; and in order to ascertain whether or not we have jurisdiction, we must take the record as we find it, and not as it would have been if the District Court had accorded to the plaintiff all his rights. For we cannot pronounce judgment upon any part of the record without assuming jurisdiction; and to say that the District Court ought to have allowed the amendment, is to say that we have examined the bill of exception, and are of the opinion that the District Judge erred.

The motion to dismiss must therefore be overruled.

The next question is, what disposition shall this court make of the case?

We have come to the conclusion to remand the case with directions to the District Judge to allow the amendment. It may imply a doubt on the part of the plaintiff of the validity of his claim, but we know of no law which prevents him from remitting a portion of his *demand* before judgment, even with the design of depriving the Supreme Court of its appellate jurisdiction. In all matters not appealable, the inferior courts are presumed to have decided according to law, and such judgments cannot be distinguished, as to their validity, from those of this court.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that this case be remanded to the lower court for a new trial, with instructions to permit the plaintiff to file said amended petition; and it is further ordered that the plaintiff pay the costs of the appeal.

Land, J., absent.

## Same Case—On a Re-hearing.

The plaintiff has applied for and obtained in this case a re-hearing, and he insists upon two grounds for setting aside our former decree.

First. That the appeal should be dismissed, and

Second. That if the case be remanded, it should be remanded at defendant's costs.

On the first ground it is urged that there was no *serious* demand for more than two hundred and ninety dollars. It does not appear to us that the plaintiff who filed a petition demanding $1000, and who obtained a verdict for $800, can successfully maintain that the demand is not serious *quoad* the defendant for a sum over $300.

By reference to the petition, the answer and minutes of the court, which compose the record, so far as the test of the matter in dispute at the time of trial is concerned, it is shown, that when the verdict of the jury was given and the judgment of the court was rendered, the demand was for $1000. As the record then stood, the plaintiff might have demanded, and risking a new trial, taken judgment for eight hundred dollars, notwithstanding his previous offer to amend by reducing his demand. If the judge erred, it was an error which might have been prejudicial to the defendant, as well as the plaintiff. This demand in the petition cannot be considered a purely fictitious claim wrought for the purpose of giving the Supreme Court jurisdiction. Whatever the plaintiff may now say, his demand was a real one when brought and when passed upon by the jury. *And it has not yet been reduced on the record* to a sum below three hundred dollars, and cannot be reduced to have a retro-active effect until the decision of the District Court on the inter-locutory question is considered and overruled, which is an examination of the case here on the merits. We are not therefore satisfied that there was error in our former decree sustaining the jurisdiction of the court.

On the second ground, we considered that the case ought not to be remanded at the cost of the plaintiff, for *non constat* but the judgment of the lower court might be right, and the plaintiff might be entitled to a final judgment on the merits. And we concluded further, that having jurisdiction for one purpose, we had jurisdiction for all, and that the case, in justice to both parties, ought to be examined on the merits.

We have, therefore, given the case the examination which the questions on the merits demand.

The plaintiff resides, as he alleges, on the left bank of the Bayou La-fourche, about 28 miles from Thibodeaux, and there cultivates a small tract of land. The defendants, who cultivate a plantation some distance above, also own two tracts of wild land on the same side of the bayou, about thirty-five miles below Thibodeaux, that is, about seven miles below the plaintiff's land, and fronting on the bayou.

In 1856, there were two periods of high water, in which crevasses

occurred on the uncultivated property of defendants, during the last of which some damage was done to the plaintiff's crops from the water which flowed through the crevasses on the lands of defendants and others in that vicinity.

The petition charges want of care, and wilful and culpable negligence on the part of defendants. The record is very voluminous, but the view we have taken of the case makes it unnecessary to consider more than a single point presented by the testimony.

The case rests upon the 25th section of the Act of 1829, p. 91, which is in these words, viz, "Every proprietor whose levee shall have been broken by his own neglect to comply with the provisions of this Act, shall be liable towards the planters who shall suffer by it, for all damages and losses, agreeably to articles 2294 and 2295 of the Civil Code, under the head of offences and quasi-offences."

The proof shows that the defendants, in the fall of 1855, put their levees in good repair, so that the same were accepted by the inspector, who gave his certificate to that effect.

Again, when during the first rise in 1856, a single crevasse occurred upon one of the tracts of land, the defendants sent hands to close the same, and they were kept at the work until they were sent home by the levee inspector. During the second rise the defendants kept the proper number of hands upon the place to watch the levees, and when they broke a second time they sent their force from their plantation, some distance above, to close the same. We can see no want of care on the part of the defendants. They obeyed the instructions of the levee inspector, and they are not bound for any error or misdirection of this officer, made in good faith in the lawful discharge of his duties.

Again, crevasses on six other plantations in the immediate vicinity of defendant's lands; and it is shown that from natural and artificial causes the bayou Lafourche below Lockport has not capacity, with any ordinary levees which can be made, to carry off at this point the water which enters from above. The subject has given the public authorities solicitude, and from accurate measurements of the volume and velocity of the amount above and below, it is demonstrable that the bayou has not one half and scarcely one third of the capacity at this point it has at Donaldsonville, and it is made sufficiently certain that levee at this point below Lockport can never withstand the volume of water which will be thrown upon them by any considerable rise of the Mississippi, until either the Lafourche is partially closed at Donaldsonville, or a new system of levees of enormous magnitude is devised.

The more rapid current is sufficient to keep the channel open above and to hold the earthy particles of the water of the Mississippi in suspension. At this point the current is not so swift, and hence there is a constant tendency to make deposits of sand from islands and fill the channel of the bayou. As a consequence of the change of the current from an

LeBlanc
v.
Pittman.

inclined to a more level plane, in every high water the levees give way and this part of the bayou is relieved by a great number of shallow outlets formed by the crevasses.

On the whole, we see nothing in the record which can maintain the judgment of the District Court in this case.

It is therefore ordered, adjudged and decreed, that the judgment heretofore pronounced by us be set aside, and it is now ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that there be judgment in favor of the defendant, with the costs of both courts.

VOORHIES, J., *dissenting*.   After closing his evidence, and before the defendants had commenced adducing their proofs, the plaintiff moved, in the court below, to discontinue his demand, so as to reduce the amount claimed to the sum of $290.

On the defendants' objection, the District Judge overruled the motion. The plaintiff thereupon took a bill of exception, to which he appended his amended petition.

The general rule is, that a party may, at every stage of the proceedings previous to the rendition of judgment, discontinue the suit.   In jury trials, this motion may be made until the moment when the jury is about to withdraw.   After the withdrawal of the jury, the plaintiff is no more at liberty to dismiss his demand; and the verdict, whatever it be, is binding upon all the parties.   C. P. 491, 532.

There was error, consequently, in the refusal to allow the plaintiff to file his amended petition.   This error has been recognized in our former opinion; and, indeed, it is yet conceded.

But one course of two can be pursued: to give effect, in this Court, to the plaintiff's motion; or remand the cause to enable him to exercise his legal right in that respect.

If effect be given to the plaintiff's demand, without remanding the cause, by treating the amended petition as filed at the time it was offered, then the pleadings show a case which does not involve an amount exceeding three hundred dollars.   Hence, a dismissal of the appeal.

If the case be remanded to save the amended petition formally filed in the court below, once this is done, the pleadings will again show on their face that the case is not appealable.

Under both hypotheses, whatever the evidence, the Court could not, without ignoring the bill of exceptions, render judgment in favor of the plaintiff for more than $290, even were there conclusive proof for a larger amount.

I conclude, that we have no jurisdiction in the premises, and that this appeal ought to be dismissed.   14 An. 114; 2 An. 136.

DUFFEL, J., concurs in the above opinion.